992 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eddie and Lanita HERRINGTON, as Co-Personal Representatives
of the Estate of Eric P. Herrington, Deceased,
Plaintiffs-Appellants,
v.
BOYAS EXCAVATING, INC., an Ohio Corporation, and the City of
Cleveland, jointly and severally, Defendants-Appellees.
 No. 92-3475.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before JONES and GUY, Circuit Judge and LIVELY, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs, the personal representatives of the estate of Eric Herrington, appeal the grant of summary judgment in favor of defendants, Boyas Excavating, Inc., and the City of Cleveland, Ohio. Plaintiffs raise the following allegations of error: (1) the district court erred in finding that defendants were statutorily immune from liability under Ohio law; and (2) the district court erred in finding that defendants owed no duty to protect plaintiffs' decedent from dangerous conditions existing on the East Ninth Street Pier in Cleveland and in the waters adjacent to the pier. We affirm in part and reverse in part.
 
 I.
 
 2
 The facts of the instant case are tragic. On the evening of August 21, 1987, Eric Herrington, a 12-year-old boy, ate dinner at Captain Frank's, a restaurant located on the East Ninth Street Pier in Cleveland, Ohio. Eric was accompanied by his 19-year-old aunt, Tuesday Knight; her boyfriend, Keith Marshall; and a male friend of the couple's. The group had earlier seen a movie together and stopped by the restaurant at approximately 10:30 p.m. After the group finished eating, they returned to their car, which was parked at the back of the restaurant. According to Knight, Eric informed her that he needed to go to the restroom. She gave him permission to do so and watched him enter Captain Frank's to use the lavatory. When, after a few minutes, Eric had not returned, Knight, Marshall, and their friend began to search for the boy.
 
 
 3
 Darrell Marsh and Annjeanette Bailey, who were out on a date that evening, were sitting in a car parked on the pier behind Captain Frank's. Around 11:30 p.m., Bailey first noticed Eric being dangled over the edge of the pier by a "much older ... male." A "girl" was standing with them. (App. 118-19). According to Bailey, Eric was laughing as the older boy held him over the water by his feet and hands. A short time later, Eric, the girl, and the older male returned to a car parked in front of Marsh and Bailey. The three of them then began "slapping each other with towels." (App. 119). About ten minutes later, Bailey saw Eric walk around Captain Frank's and sit at the same spot from where he had been earlier held over the water. Ten or fifteen minutes after she noticed Eric at that spot, Bailey saw him "jump or slip over the side." (App. 120). When she mentioned this to Marsh, he told her not to worry because there was a walking surface under the pier. About five minutes after Eric disappeared, Bailey saw the "older boy and girl and a third individual" apparently looking for him. (App. 120-21).[1] Marsh told them that Bailey had seen Eric drop from the pier. Eric's body was ultimately found by the police in the water near the location where Bailey last saw him. He had drowned.
 
 
 4
 At the time of Eric's death, the East Ninth Street Pier formed part of the border of a construction project known as the Cleveland Inner Harbor Project. The State of Ohio Department of Natural Resources was developing a harbor and a waterfront park, using land and water west of the pier. In order to facilitate the project, the City of Cleveland leased certain municipal property in the Inner Harbor area to the State. A temporary construction easement for the west side of the pier accompanied the lease.
 
 
 5
 The State hired defendant Boyas Excavating, Inc. ("Boyas"), as the general contractor for the harbor development. Pursuant to its contract with the State, Boyas was made solely responsible for "initiating, maintaining and supervising all safety precautions and programs in connection with the Work." (App. 797). This duty extended to "[a]ll employees on the Work and all other persons who may be affected thereby[.]" (Id.). As part of its responsibility for safety, Boyas was obligated to
 
 
 6
 erect and maintain, as required by existing conditions and progress of the work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities.
 
 
 7
 (Id.).
 
 
 8
 In order to limit its liability for injuries related to the construction, the contract allowed Boyas "to deny access to the work or parts of it to third parties at all times during construction except to third parties to inspect, certify, or observe it when required by law...." (App. 799).
 
 
 9
 Prior to the commencement of the harbor development, the East Ninth Street Pier extended north from the shoreline into Lake Erie and was surrounded by water on three sides. Pier 34, parallel to the East Ninth Street Pier on the west, extended into Lake Erie in a similar fashion. Part of the Cleveland Inner Harbor Project called for the installation of a strip of land connecting the eastern end of Pier 34 with the western end of the East Ninth Street Pier. Accordingly, Boyas began to create a landfill that, by August 12, 1987, nearly touched the East Ninth Street Pier. According to William Halishak, a Boyas supervisor, Boyas became concerned that persons might attempt to jump from the pier to the landfill. The company erected a plastic construction fence which, at the time of Eric's death, extended about 25 feet north and south of the boundaries where the landfill made contact with the pier. The point where Annjeanette Bailey saw Eric jump or slip into the water was approximately 20 feet south of the construction fence. Eric's body was found in the water approximately 20 to 25 feet south of the landfill.
 
 
 10
 Plaintiffs instituted a negligence action against defendants on May 2, 1988, alleging that Boyas and the City failed to implement reasonable safety precautions in connection with the construction site. Federal jurisdiction was premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332.
 
 
 11
 On April 24, 1991, Boyas filed a motion for summary judgment, arguing that it was immune from liability in accordance with Ohio's statutory exemption from liability to recreational users of property. Ohio Rev.Code § 1533.181. On July 15, 1991, the City also filed for summary judgment, citing the recreational user statute. The district court found that issues of material fact existed and accordingly denied Boyas' motion, while postponing any disposition of the City's motion. Subsequently, however, on April 22, 1992, the district court granted summary judgment in favor of both defendants, finding that Boyas and the City were shielded from liability by the recreational user statute. The court also found that the City had no duty to protect persons using its public grounds from dangers lying on adjacent property, including Lake Erie. The instant appeal followed.
 
 II.
 The City of Cleveland
 
 12
 Rule 56(c) of the Federal Rules of Civil Procedure, which governs summary judgment motions, provides:
 
 
 13
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 
 
 14
 In reviewing a motion for summary judgment, the district court is required to view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986). The party moving for summary judgment has the burden of showing that no such facts remain to be litigated. If the moving party meets its burden, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986).
 
 
 15
 The district court based its grant of summary judgment in favor of the City largely by applying Ohio's statutory exemption from liability to recreational users of property to undisputed facts. Ohio Rev.Code § 1533.181. The statute states:
 
 
 16
 (A) No owner, lessee, or occupant of premises:
 
 
 17
 (1) Owes any duty to a recreational user to keep the premises safe for entry or use;
 
 
 18
 (2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;
 
 
 19
 (3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.
 
 
 20
 The terms "premises" and "recreational user" are defined in the preceding section of the Ohio Revised Code, section 1533.18:
 
 
 21
 (A) "Premises" means all privately-owned lands, ways, waters, and any buildings and structures thereon, and all state-owned lands, ways, and waters leased to a private person, firm, organization, or corporation, including any buildings and structures thereon.
 
 
 22
 (B) "Recreational user" means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits.
 
 
 23
 Hence, under Ohio law, the owner, lessee, or occupant of premises that are open to the public for use without charge is immune from liability for injury or death to persons using those premises for recreational pursuits. After reviewing the papers submitted in conjunction with the City's summary judgment motion, the district court found that Eric's use of the municipally-owned pier was within the coverage of the recreational user statute and barred plaintiffs' claims against the City.
 
 
 24
 Section 1533.181 is a statutory immunity that was preserved after Ohio waived its sovereign immunity from certain forms of tort liability in 1975 and consented to be sued "in accordance with the same rules of law applicable to private parties." Johnson v. New London, 36 Ohio St.3d 60, 62 (1988), quoting Ohio Rev.Code § 2743.02(A). It applies to land owned by political subdivisions of the State, such as Cleveland, to the same extent as to privately-held land. Marrek v. Cleveland Metroparks Bd. of Commrs., 9 Ohio St.3d 194, 197 (1984).
 
 
 25
 It is undisputed that the East Ninth Street Pier was open to the public free of charge for a wide variety of recreational pursuits. According to Ronald Toth, an administrator for the Cleveland Department of Port Control, the pier has been used as a boat mooring facility, for fishing, for waterskiing, and for "enjoy[ing] the sunset." (App. 222). Such activities are plainly within the contemplation of section 1533.181 as "recreational pursuits". See Ohio Rev.Code § 1533.181. See also LiCause v. Canton, 42 Ohio St.3d 109 (1989) (walking through a park and watching softball); Fetherolf v. State, 7 Ohio App.3d 110 (1982) (sitting on a beach and watching others swim). The statute promotes the public use of property for both active play and for passive meditation upon the bucolic qualities of the outdoors.
 
 
 26
 There also is no question that the immunity from suit set forth in section 1533.181 is applicable to the recreational use of an artificial structure, such as the East Ninth Street Pier. The purpose of the statute is to encourage landowners to open their property to the public for outdoor diversions without fear of liability. Sorrell v. Ohio Dept. of Natural Resources, 40 Ohio St.3d 141, 145 (1988). Cases in which the use of a man-made structure has been found not to come under the purview of section 1533.181 have turned upon its lack of public access. See Leach v. City of Ironton, No. 1918, 1990 WL 138480, 1990 Ohio App. LEXIS 4163 (September 5, 1990) (no immunity for use of dock because not open to public); McNamara v. Cornell, 65 Ohio App.3d 269 (no immunity for use of skateboard bowl because not open to public); Fryberger v. Lake Cable Recreation, Assn., 40 Ohio St.3d 349 (no immunity for use of dock because not open to public). Cf. Light v. Ohio University, 28 Ohio St.3d 66 (no immunity for use of indoor gymnasium). The accessibility of the pier to members of the public is not in controversy in the case at bar.
 
 
 27
 Eric's particular activities on the night of his death qualify him as a recreational user of the pier. Plaintiffs argue that Eric did not come to the pier to engage in any recreational pursuit, but rather to eat at Captain Frank's. Under Ohio law,
 
 
 28
 [t]he existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises. If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury.
 
 
 29
 Miller v. Dayton, 42 Ohio St.3d 113, 115 (1989) (emphasis added). A person's intent in entering onto property designated for recreational activities is irrelevant under section 1533.181. Plaintiffs do not suggest that Eric was the victim of negligence on the part of Captain Frank's, a commercial facility. If the boy were injured inside the restaurant, we agree that the recreational user statute would not immunize the City from liability. However, Eric suffered his fatal injury in connection with his use of the pier itself. He had been undertaking precisely the sorts of activities for which the East Ninth Street Pier was dedicated to the public. The presence of Captain Frank's on the pier did not transform the entire area into a concession stand.
 
 
 30
 Plaintiffs contend that, even if the East Ninth Street Pier could have been considered recreational property at some other time, at the time of Eric's death it had the character of a construction site. However, it is undisputed that the spot from which Eric jumped or fell into the water remained open and fully accessible to the public. No construction was taking place on the pier in the area where Eric had been seen. There were no hazardous materials related to the harbor development in the vicinity. Plaintiffs made no showing whatsoever that the public could not have safely used that part of the pier for recreational purposes. After considering the evidence in the light most favorable to plaintiffs, we agree with the district court that Eric was present on recreational property.
 
 
 31
 Accordingly, we conclude that summary judgment in favor of the City was proper in regard to plaintiffs' claims related to the operation of the East Ninth Street Pier itself. We now consider whether such a disposition was also appropriate as to any nuisance which may have existed in the waters off the pier.
 
 
 32
 The liability in tort of Ohio's political subdivisions is limited by the Political Subdivision Tort Liability Act, Ohio Revised Code Chapter 2744. Section 2744.02(B) sets forth certain exceptions to the non-liability of municipalities as provided in the Act. Specifically, section 2744.02(B)(3) states:
 
 
 33
 Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance....
 
 
 34
 In the instant case, however, the immunity contained in the recreational user statute precludes municipal liability related to Eric's use of City grounds, i.e., the pier itself. See Ohio Rev.Code § 2744.03(A)(7) ("The political subdivision ... is entitled to any defense or immunity available at common law or established by the Revised Code.").
 
 
 35
 Furthermore, the City had no duty to protect Eric or any other person using the pier from dangers which may have existed in the adjacent waters. See Mitchell v. Cleveland Elec. Illuminating Co., 30 Ohio St.3d 92 (1987). In Mitchell, the decedents, a father and his son, entered a municipal park abutting Lake Erie and waded out onto a sandbar to fish. The son stepped off the sandbar, got caught in an undertow, and drowned. The father tried to save him and also drowned. The plaintiff in Mitchell contended that the municipality owed a duty to keep the park free from nuisance and that this duty extended to the waters adjoining the park. 30 Ohio St.3d at 93-4. The Supreme Court of Ohio rejected this argument, holding that the municipality had no duty to protect persons using the park from dangers outside its boundaries. It noted that, under Ohio law,
 
 
 36
 liability in tort is an incident to occupation or control. The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.
 
 
 37
 30 Ohio St.3d at 94 (citations omitted). The court concluded that, because the drownings occurred beyond the territorial limits of the municipality, it did not possess the requisite control of the waters to create a duty of care.
 
 
 38
 In the instant case, plaintiffs argue that the waters in which Eric drowned were within the control of the City. They assert that the diked reservoir created by the landfill was not part of Lake Erie, which is owned by the State.
 
 
 39
 Even assuming, arguendo, the correctness of plaintiffs' position, the City did not occupy or control the reservoir. The City's lease with the State gave the latter exclusive occupancy over the area, including the power to admit or exclude individuals from the premises. Plaintiffs nonetheless call our attention to the operation and maintenance clause of the lease, which announces that the City and State intend to enter into a separate agreement to allocate management responsibility over the Inner Harbor park. However, as plaintiffs themselves acknowledge, this agreement would not take effect until after the completion of the development project. Plaintiffs have pointed to no instance during the term of the lease in which the City attempted to exercise control over the reservoir itself, such as by removing debris from the waters.
 
 
 40
 Hence, under Ohio law, the City was not liable for any hazardous condition existing in the reservoir. As a result, we conclude that the district court did not err in granting summary judgment on all claims in favor of the City.
 
 III.
 
 41
 Boyas Excavating, Inc.
 
 
 42
 The district court also granted summary judgment in favor of Boyas on the grounds that it was covered by the recreational user statute, Ohio Revised Code § 1533.181. Such a disposition was premised on the court's finding that Boyas was an "occupant" of the East Ninth Street Pier and so came within the purview of the statute.[2]
 
 
 43
 In an unpublished decision, Simmers v. Bentley Construction Co., 1991 WL 100522, 1991 Ohio App. LEXIS 2705 (May 19, 1991), the Ohio Court of Appeals defined the term "occupant" as it is to be used in applying the recreational user statute. In Simmers, a minor fell through a hole in a railroad bridge. The plaintiffs, his parents, claimed that the defendant construction company created the hole while removing ties, spikes, and other materials from under the bridge. The company asserted the immunity contained in the recreational user statute, arguing that it was an "occupant" of the premises. The Ohio Court of Appeals disagreed:
 
 
 44
 The statute clearly envisions the owner, lessee, or occupier to be a party that has a right of title or possession.
 
 
 45
 Black's Law Dictionary defines an occupier as "a tenant, though absent, is generally speaking the occupier of premises; ... but not a servant or other person who may be there virtue officii (citations deleted)."
 
 
 46
 It appears to us that Bentley had the right to enter the premises to perform its contractual services, but not to hold those premises by right or to do other acts not anticipated by the contract. Bentley's legal status was not that of an occupier.
 
 
 47
 1991 Ohio App. LEXIS 2705 at 6.
 
 
 48
 While Simmers would not be controlling in the Ohio courts, it would be considered persuasive authority. See Supreme Court Rules for the Reporting of Opinions, Rule 2. In the absence of more definitive guidance, we also find its reasoning persuasive.
 
 
 49
 In the instant case, Boyas' presence on the pier was pursuant to a temporary construction easement. The company had no right of possession attaching to the property. In light of Simmers, we are convinced that the recreational user statute does not protect a holder of an easement pertaining to a non-recreational use of the premises. Such a party does not have the legal power to fix the character of the premises. It merely has an ability to enter onto the property for a limited, non-recreational purpose. Any injury related to its presence on the property is likely to be the direct result of its non-recreational activities. We therefore conclude that Boyas may not avail itself of the immunity set out in the recreational user statute.
 
 
 50
 Boyas makes much of the fact that its contract with the State afforded it the right "to deny access to the work or parts of it to third parties." (App. 799). The existence of such a right hardly suggests a contrary holding. If anything, it indicates that any area over which the company exercised this power ought to be considered a portion of the active construction site.[3]
 
 
 51
 Having determined that Boyas is not shielded from liability by the recreational user statute, we find that a number of material issues of fact are in dispute concerning the extent of the company's exercise of its duty of care to the public. Foremost among these is whether the fence erected by Boyas was sufficient to protect Eric from any hazards under the control of the company, including runoff and debris from the landfill that may have contributed to the boy's death. In deciding as we do, we make no pronouncement about the merits of plaintiffs' claims. We merely hold that summary judgment was improper in light of the facts remaining to be litigated. Accordingly, the district court's grant of summary judgment in favor of Boyas is reversed.
 
 
 52
 AFFIRMED in part and REVERSED in part.
 
 
 
 [1]
 In her affidavit, Bailey does not identify by name the individuals that she saw with Eric that evening. Her statements, however, give every indication that they were in fact Knight, Marshall, and the couple's friend
 
 
 [2]
 Boyas asserts that plaintiffs never argued before the district court that it was not an "occupant" of the pier. The company contends therefore that plaintiffs cannot advance such an argument for the first time on appeal. While it is true that plaintiffs did not specifically contest Boyas' status as "occupant" below, they objected to recreational user immunity being extended to Boyas and, accordingly, invited the district court to pass upon the issue as a whole
 
 
 [3]
 As there is no evidence that Boyas attempted to exclude persons from the spot where Eric was last seen, the existence of Boyas' right to deny access to third parties does not affect the City's immunity